IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JARED NATHAN BLACK,<br><br>Defendant. | Case No. 21-CR-009-GKF |

**OPINION AND ORDER**

Before the court is the Motion To Dismiss [Doc. 96] filed by defendant Jared Nathan Black. For the reasons set forth below, the motion is granted.

I. **Procedural Background**

On February 16, 2021, a grand jury returned an Indictment charging Jared Nathan Black with one count of Assault with Intent to Commit Murder in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(1). [Doc. 2]. On May 7, 2021, Mr. Black filed an unopposed motion for competency evaluation and for evaluation of sanity at the time of the offense. [Doc. 27]. On May 11, 2021, the magistrate judge conducted a hearing and subsequently entered an Order for Competency Evaluation in a Bureau of Prisons facility to determine whether Mr. Black was mentally competent to stand trial and set a review hearing for July 13, 2021. [Doc. 35]. On May 24, 2021, the magistrate judge entered an order directing the Bureau of Prisons to expand the evaluation to determine whether Mr. Black was competent at the time of the alleged offense. [Doc. 38].

On September 20, 2021, a grand jury returned a Superseding Indictment charging Mr. Black with one count of Assault with Intent to Commit Murder in Indian Country, in violation of

18 U.S.C. §§ 1151, 1152, and 113(a)(1) and one count of Carrying, Using, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii). [Doc. 47]. On September 22, 2021, after an in-person hearing, the magistrate judge found Mr. Black incompetent to stand trial. [Doc. 50]. In an order filed September 23, 2022, Mr. Black was ordered committed to the custody of the Attorney General for care and treatment to restore his competency. [Doc. 54]. This order should have triggered the U.S. Marshal to designate Mr. Black for transfer but did not.[1] In this same order, the magistrate judge set a review hearing for February 3, 2022. [*Id.*].

On or around February 1, 2022, the magistrate judge learned that Mr. Black had not been transported to any medical facility for care and treatment as directed in the September 23 order. [Doc. 55]. Mr. Black was then designated for transport, and the magistrate judge reset Mr. Black's competency review hearing for May 25, 2022. [Doc. 57].

Mr. Black arrived at the medical facility on March 29, 2022, approximately sixty days after being designated. [Doc. 58]. In a letter dated March 31, 2022, the warden at Federal Medical Center Butner ("FMC Butner") provided an expected timeline for his evaluation period. [Doc. 58]. The magistrate judge ordered the warden to provide an evaluation no later than August 16, 2022, and set a review hearing for August 18, 2022. [Doc. 59]. By report dated July 28, 2022, the evaluator opined that Mr. Black had been restored to competency. [Doc. 63, p. 22]. The evaluator

---

[1] The United States Marshal personally informed the undersigned on November 16, 2022, that the error was his, insofar as his office did not notice the magistrate judge's commitment order of September 23, 2021, which is said to have been emailed to a Marshals Service email address that received many types of emails each day, including but not limited to: scheduling orders directing the U.S. Marshal to bring defendants to court for hearings and trials, orders directing the U.S. Marshal to serve defendants and/or witnesses, Rule 5 orders, and orders committing defendants for competency evaluations. In its response brief, the government gives a different account of where the responsibility falls, insofar as a Supervisory Deputy U.S. Marshal informed the U.S. Attorneys on November 17, 2022, that the Marshals Service did not receive a copy of the order requiring transport. However, it makes no difference here where the blame falls. To remedy the failure to communicate that occurred in this case, the U.S. Marshal now receives commitment orders at an email address reserved for commitment orders alone.

requested an additional 30 days to address Mr. Black's insanity at the time of the offense. [*Id.* at 23]. On August 4, 2022, the magistrate judge entered an order granting the evaluator's request to complete the insanity evaluation and ordered the examination to be completed by September 4, 2022, and the related report to be submitted to the court by September 18, 2022. [Doc. 64]. She also reset the competency hearing for October 6, 2022. [*Id.*]. The magistrate judge found the additional time for completing the sanity examination to be excludable under 18 U.S.C. § 3161(h)(1)(A). [*Id.*]. Based on an extension request from the warden dated August 9, 2022, the court granted an extension for submission of the report until September 26, 2022. [*See* Doc. 65, 66]. In advance of the October 6, 2022, hearing, the magistrate judge was informed that Mr. Black could not be transported to Oklahoma by the scheduled date of the hearing, and she continued the hearing until October 25, 2022. [Doc. 67]. On September 27, 2022, the court received the sanity evaluation, which was dated September 16, 2022. [Doc. 68]. On October 26, 2022, after conducting an in-person hearing, the court found Mr. Black competent to stand trial. [Doc. 72]. Having been restored to competency, the court scheduled Mr. Black's trial for November 2022. [Doc. 73].

On October 28, 2022, Mr. Black filed a Motion to Proceed *Pro Se*, seeking to represent himself during his upcoming trial. [Doc. 74]. On November 4, 2022, the court notified the parties that it would hold a *Faretta* hearing during the previously scheduled pre-trial conference for this matter to determine whether Mr. Black was voluntarily, knowingly, and intelligently waiving his right to counsel. [Doc. 77]. On November 8, 2022, a grand jury returned a Second Superseding Indictment charging Jared Nathan Black with one count of Assault with Intent to Commit Murder in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(1); one count of Carrying, Using, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of

18 U.S.C. §§ 924(c)(1)(A)(ii); and one count of Assault with a Dangerous Weapon with Intent to do Bodily Harm in Indian Country, in violation of 18 U.S.C. § 1151, 1152, and 113(a)(3). [Doc. 81]. On November 14, 2022, the court held a pre-trial conference for this matter and a contemporaneous *Faretta* hearing and granted Mr. Black's Motion to Proceed *Pro Se* after determining through the required colloquy that Mr. Black had voluntarily, knowingly, and intelligently waived his right to counsel. [*See* Doc. 85]. The court also directed Mr. Black's prior counsel to remain as standby counsel. [*Id.*]. During this hearing, Mr. Black orally moved to dismiss the charges against him due to violations of his speedy trial right based on the delays described above. The court directed him, through his standby counsel, to file a formal Motion to Dismiss by November 15, 2022, and directed the government to respond by November 17, 2022. [*Id.*] Mr. Black filed his Motion to Dismiss [Doc. 96] and the government responded. [Doc. 97].

**II.     Analysis**

Mr. Black claims that the Indictments against him should be dismissed for violations of the Speedy Trial Act, specifically a violation of 18 U.S.C. § 3161(h)(1)(F) related to the delay in transportation to the medical facility after he was found incompetent to stand trial and for violations of both procedural and statutory due process under 18 U.S.C. § 4241(d) related to the length of time his evaluations took when he was being evaluated. [*See* Doc. 96]. The government argues that the time between May 11, 2021, and October 26, 2022, should be excluded under a combination of 18 U.S.C. § 3161(h)(1)(A), 18 U.S.C. § 3161(h)(4), 18 U.S.C. § 3161(h)(1)(F), and 18 U.S.C. § 3161(h)(1)(D), and that a violation of 18 U.S.C. §§ 4241 and 4247 cannot give rise to a Speedy Trial Act violation. [*See* Doc. 97]. The court will review each in turn and will begin with the overlap between the Speedy Trial Act and sections 4241 and 4247, as the parties focused most of their arguments on that overlap.

### a. 18 U.S.C. § 4241(d)

Mr. Black argues that his charges should be dismissed because his competency evaluations, distinct from the transportation-related delays, took longer than the statutory limitations included in 18 U.S.C. § 4241(d). That section requires a defendant who has been found mentally incompetent to stand trial be hospitalized for "a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1). Mr. Black's arguments and the time periods he is challenging, however, center on 18 U.S.C. § 4247(b), which states, in relevant part:

> For the purposes of an examination pursuant to an order under section 4241, 4244, or 4245, the court may commit the person to be examined for a reasonable period, but not to exceed thirty days . . . to the custody of the Attorney General for placement in a suitable facility. . . .. The director of the facility may apply for a reasonable extension, but not to exceed fifteen days under section 4241, 4244, or 4245 . . . upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant.

18 U.S.C. § 4247(b).

The government correctly reports that 18 U.S.C. § 4247(b) "contains time limitations for a mental examination but no express remedy for exceeding those limitations." *United States v. Taylor*, 353 F.3d 868, 869 (10th Cir. 2003). And Mr. Black does not argue that the delays in his evaluations were unreasonable or taken in bad faith.[2] *See id.*, at 870. The extensions granted during the times Mr. Black was being evaluated were relatively short and appear to have been granted upon request of the treating facilities for more time to complete the evaluations. Because Mr. Black has not shown that the delays in his evaluations were unreasonable or in bad faith, and because the Speedy Trial Act does not provide a remedy for a violation of 18 U.S.C. § 4247(b)'s

---

[2] Mr. Black argues that the delay in transportation to FMC Butner after he was found incompetent was unreasonable and should not be excluded under 18 U.S.C. 3161(h)(1)(F), as discussed in greater detail below.

time limitations for a mental competency examination, his claims with respect to sections 4241 and 4247 are unavailing.

### b. The Speedy Trial Act

The Speedy Trial Act states, in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1). The Speedy Trial Act includes a penalty for failure to meet the required timeline.

> If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3).

18 U.S.C. § 3162(2). A trial court is generally "endowed with great discretion to make decisions concerning trial schedules and to respond to abuse and delay where appropriate," however, "[t]he Speedy Trial Act . . . confines the exercise of that discretion more narrowly, mandating dismissal of the indictment upon violation of precise time limits." *United States v. Taylor*, 487 U.S. 326, 343-44 (1988).

There are certain periods of delay that are excludable from the 70-day Speedy Trial Act requirement. The government contends that the following exclusions in 18 U.S.C. § 3161(h) are relevant:

> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to— . . .

>> (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant; . . .
>
> (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; . . .
>
> (F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable; . . .
>
> (4) Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.

18 U.S.C. § 3161(h).

As an initial matter, the government argues that the exclusions listed above are automatic and "[n]one of these exclusions is subject to a reasonableness exception." [Doc. 97, p. 8.]. This is plainly incorrect, as section 3161(h)(1)(F) explicitly includes a presumption of unreasonableness for any delay greater than ten days resulting from transportation, including transportation "to and from places of examination or hospitalization." 18 U.S.C. § 3161(h)(1)(F). This is the exclusion Mr. Black argues is applicable here.

In this case, the court found Mr. Black mentally incompetent to stand trial on September 23, 2021. [Doc. 54]. He was committed to the custody of the Attorney General for care and treatment in a suitable facility and an assessment if and when his competency was found restored to a reasonable degree. [*Id.*]. Such an order would normally cause the U.S. Marshals Service to designate a defendant for transportation to the appropriate facility for care and treatment, but that did not happen here. Instead, as the result of an administrative oversight, Mr. Black did not arrive to the treatment facility until March 29, 2022, [Doc. 58], 187 days after the order directing him committed had been entered.

Mr. Black argues that any time in excess of 10 days from the date of the order directing him to be transferred for an examination or hospitalization to his arrival at the relevant facility is presumed unreasonable under 18 U.S.C. § 3161(h)(1)(F) and is therefore not excludable under the Speedy Trial Act. If he is correct and the resulting non-excludable time is then greater than 70 days, the court must dismiss the Indictments as required by the Act.

### i.  18 U.S.C. § 3161(h)(1)(A)

Section 3161(h)(1)(A) excludes from Speedy Trial Act calculations any period of delay "resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." The government directs the court to *United States v. Vasquez*, 918 F.2d 329 (2nd Cir. 1990) as a case analogous to Mr. Black's. The facts in *Vasquez* are generally similar to the facts here. The court entered an order directing a psychiatric examination of Vasquez, but the U.S. Marshals Service did not receive the order. Approximately four months passed. The Ninth Circuit held that this period of delay was excludable because Mr. Vasquez was being transferred to FMC Butner to have his mental competency determined.

A critical distinction exists between this case and *Vasquez*. In *Vasquez*, the transportation delay occurred *before* he was found incompetent to stand trial. Here, Mr. Black's mental competency had already been determined by the court. The subsequent further examinations and treatment were for the purposes of *restoring* Mr. Black's competency as opposed to determining it. As a result, section 3161(h)(1)(A), which only applies to "any proceeding, including any examinations, to *determine* the mental competency or physical capacity of the defendant," (emphasis added), is inapplicable here and does not operate to exclude the time Mr. Black spent waiting for transport. *See United States v. Romero*, 833 F.3d 1151, 1154 (9th Cir. 2016).

### ii.     18 U.S.C. § 3161(h)(4) and 18 U.S.C. § 3161(h)(1)(F)

The government also identifies section 3161(h)(4) as potentially excluding the entire time period from May 11, 2021, until October 26, 2022, from Mr. Black's Speedy Trial Act calculation. The government, however, provides no persuasive argument to support the theory that even unreasonable delays under section 3161(h)(1)(F) are trumped by section 3161(h)(4).

Section 3161(h)(4) excludes from Speedy Trial Act calculations "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." 18 U.S.C. § 3161(h)(4). A split of authority exists on the issue of whether section 3161(h)(4) trumps section 3161(h)(1)(F). Some courts hold that transportation delays are excludable—no matter how unreasonable—if the defendant was previously found mentally incompetent to stand trial. *See Romero*, 833 F.3d at 1151; *United States v. Bauman*, No. 07–20052, 2008 WL 5111135 (D. Kan. Dec. 4, 2008); and *United States v. DeGideo*, No. 04–100, 2004 WL 1240669 (E.D. Pa. May 18, 2004). These courts generally conclude that section 3161(h)(4) trumps because any delays resulting from transportation in this context only occur because the defendant had been found incompetent and that section 3161(h)(4) does not include a reasonableness requirement. Other courts hold that unreasonable transportation delays are not excludable, even where the defendant has been found incompetent, because the delay is directly attributable to the failure to transport and not from the fact that the defendant is mentally incompetent. *See United States v. Dellinger*, 980 F. Supp. 2d 806, 812 (E.D. Mich. 2013); *United States v. Sparks*, 885 F. Supp. 2d 92, 100-01 (D.D.C. 2012); and *United States v. Hernandez–Amparan*, 600 F. Supp. 2d 839, 842-43 (W. D. Tex. 2009).

This court finds the second line of cases more persuasive. Both clauses require the delay at issue be "resulting from" the relevant event, either transportation or the fact that the defendant

is mentally incompetent. The delay here directly resulted from the failure to transport Mr. Black to FMC Butner and not from Mr. Black's mental incompetence. Although Mr. Black would not have needed the transportation to FMC Butner had he not been found incompetent, he would have been receiving care and treatment and may have been restored to competence sooner had he been promptly transported. The facts in *Sparks* are similar to those here. The defendant in that case was determined to be incompetent and, due to a clerical error, was not promptly transported to FMC Butner as directed by the court. As in *Sparks*, "the delays in this case were caused by (i.e., resulted from) a failure to transport the defendant to FMC Butner for court-ordered psychiatric treatment . . . [t]he fact of the defendant's incompetency had little to do with the delay, other than giving rise to the need to transport him for treatment." *Sparks*, 885 F. Supp. 2d at 101.

To read section 3161(h)(4) to provide a blanket exclusion for all time after a defendant is found incompetent would require the court to discount section 3161(h)(1)(F) as "mere surplusage," a result that would violate the canons of statutory interpretation. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)) *See also United States v. Noone*, 913 F.2d 20, 26 n. 5 (1st Cir. 1990) (stating that "any other interpretation would render mere surplusage the specific reference . . . to transportation 'to and from places of hospitalization'"). Such an interpretation would theoretically allow a mentally incompetent defendant to be held indefinitely and without recourse under the Speedy Trial Act despite an existing court order directing that the defendant be transported to undergo treatment in an effort to return him to competence. *See United States v. Lewis*, 484 F.Supp.2d 380, 386–387 (W.D. Pa. 2007) (opining that reading the transportation delay exclusion

out of the statute would mean that "defendants who are subjected to extraordinary transportation delays at the hands of the U.S. Marshals Service would otherwise be without recourse, contrary to the apparent purpose" of the transportation exclusion.).

The court holds that the delay in excess of ten days in transporting Mr. Black to FMC Butner for treatment and care after he was determined incompetent to stand trial is presumptively unreasonable. The government has not rebutted this presumption. Only 10 of the 187 days between September 23, 2021, and March 29, 2022, Mr. Black was awaiting transport to FMC Butner are reasonable; the remaining 177 days are not excludable under the Speedy Trial Act.

### iii. 18 U.S.C. § 3161(h)(1)(D)

The government also argues that section 3161(h)(1)(D) serves to exclude time from Mr. Black's Speedy Trial Act calculation. Section 3161(h)(1)(D) excludes any period of delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). The government, however, does not point to any motion pending during the time Mr. Black was awaiting transportation to FMC Butner. The government's argument is therefore unpersuasive.

Because the 177 non-excludable days Mr. Black waited for transportation to FMC Butner after being found incompetent to stand trial are well beyond the 70 days allowed by the Speedy Trial Act, Mr. Black's rights under that Act have been violated and the court must dismiss the Indictments against him.

### c. Dismissal With or Without Prejudice

Because the court has determined that a Speedy Trial Act violation occurred, the case must be dismissed. "While dismissal of the indictment is mandatory, the district court retains discretion

to determine whether the indictment is dismissed with or without prejudice." *United States v. Cano–Silva*, 402 F.3d 1031, 1034 (10th Cir. 2005).

The Speedy Trial Act provides:

In determining whether to dismiss [a] case with or without prejudice, [a] court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2).

"[T]he application of the more severe sanction of dismissal with prejudice . . . should be reserved for more egregious [STA] violations." *Cano–Silva*, 402 F.3d at 1035. Mr. Black made no argument that the Second Superseding Indictment should be dismissed with prejudice and the government argues that, if the court finds a Speedy Trial Act violation requiring dismissal, the dismissal should be without prejudice.

### i. Seriousness of the Offense

The seriousness of the offense is one factor a district court must consider in deciding whether to dismiss an indictment with or without prejudice for a Speedy Trial Act violation. 18 U.S.C. § 3162(a)(2). "If the court determines the offense committed by the defendant is serious, this factor weighs in favor of dismissing without prejudice." *United States v. Saltzman*, 984 F.2d 1087, 1092-93 (10th Cir. 1993). One way the district court can measure the seriousness of an offense is by considering the length of sentence Congress has adopted for that offense. *United States v. Koerber*, 813 F.3d 1262, 1276 (10th Cir. 2016).

Here, Mr. Black is charged with Assault with Intent to Commit Murder in Indian Country, Carrying, Using, and Brandishing a Firearm During and in Relation to a Crime of Violence, and Assault with a Dangerous Weapon with Intent to do Bodily Harm in Indian Country. These are

all serious crimes, as evidenced by the available sentences upon conviction. These include a potential 20-year sentence for Assault with Intent to Commit Murder in Indian Country, a potential 10-year sentence for Assault with a Dangerous Weapon with Intent to do Bodily Harm in Indian Country, and a potential life sentence for Carrying, Using, and Brandishing a Firearm During and in Relation to a Crime of Violence. The length of Mr. Black's potential sentence persuades the court that it need not balance the other factors suggested in *Koerber* to determine whether the offenses are serious.[3] This factor weighs in favor of dismissal without prejudice.

### ii. Facts and Circumstances of the Case Leading to Dismissal

"In determining whether the facts and circumstances warrant dismissal with prejudice we focus on the culpability of the conduct that led to the delay." *Cano–Silva*, 402 F.3d at 1036. "Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." *Saltzman*, 984 F.2d at 1093-94.

The record does not show intentional dilatory conduct or a pattern of neglect by the government and Mr. Black does not argue that such conduct was present here. Rather, the delay here appears to have been the result of an unfortunate oversight by the U.S. Marshals Service which resulted in Mr. Black not being transported to a medical facility and not the result of any error by the prosecution. As a result, this factor also weighs in favor of dismissal without prejudice.

---

[3] "The district court may also balance the seriousness-of-the-offense factor with other specific facts, including (1) any resulting prejudice to a defendant from the delay, (2) the seriousness of the STA violation, and (3) the length of the delay. *See Saltzman,* 984 F.2d at 1093 ('When the charges are serious, courts should impose the sanction of dismissal with prejudice only for a correspondingly serious delay, especially in the absence of a showing of prejudice.')" *United States v. Koerber*, 813 F.3d 1262, 1277 (10th Cir. 2016).

### iii. Impact of Reprosecution on the Administration of the Act and on the Administration of Justice

In determining whether dismissal with or without prejudice best serves the administration of the Speedy Trial Act and the administration of justice, the court reviews the deterrent effect of barring reprosecution and the prejudice suffered by the defendant due to the delay. *See Saltzman*, 984 F.2d at 1094.

The Supreme Court has rejected the idea that dismissal with prejudice is the only effective way to "vindicate the guarantees of the Speedy Trial Act." *Taylor*, 487 U.S. at 342. Rather, the Court has found that "[d]ismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." [*Id.*].

Mr. Black "has a burden under the Act to show specific prejudice other than that occasioned by the original filing." *Saltzman*, 984 F.2d at 1094. He has not claimed any specific prejudice as a result of the delay, aside from the delay itself, and so has not met his burden with respect to this factor. Because Mr. Black has failed to sustain his burden, the court finds the administration of justice is best served by dismissal without prejudice.

Having considered the factors above, the court finds and concludes that the case should be, and hereby is, dismissed without prejudice.

IT IS SO ORDERED this 18th day of November, 2022.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE